May it please the Court, I am Larry Albert. On behalf of Martin Nick, I have with me today Mr. Arden, who is co-counsel for the appellant. I start by summarizing the dollar consequences of the Court's evaluation errors identified by Martin Nick. First, assuming the Court's evaluation approach and the inputs on resources and pricing parameters are correct, the Court still erred in its finding on quote-unquote implicit wages. Martin Nick submits that he already accounted for the wages of an owner and operator. The Government did not object on this issue, and therefore the Court basically double-counted on a cost item in the amount of $59,000. Second, the Court's rejection of the scope of the project rule adversely affected valuation on several items. Specifically, if Martin Nick's proportion of large nuggets and we define the term large nugget to mean anything larger than an ounce, that's perhaps arbitrary, but it was just a definition for purposes of resource estimation and resource valuation. Mr. Albert, I did not understand your brief to be asserting that the 12 percent calculation was clearly erroneous. Twelve percent as a discount rate? Well, or the implicit wages error, excuse me. Twelve percent if I'm understanding. The implicit wage, I'm sorry, I misspoke, but I did not understand your brief to be asserting any fact-finding was clearly erroneous. Let me just be broader. I respectfully disagree, Your Honor. Well, I'm sure you do. That's why I'm asking you. Where? We asserted clear error in several respects. We asserted that the Court's royalty valuation method was clearly erroneous because the Court was essentially arbitrary and specific. Look, let me be more specific. I did not understand you to be saying that any of the district court's core findings, and I can go through them, the value or the price of gold, the bank cubic yards, the average rate of gold. The Court is correct that Martin Nick did not challenge, I'll use the term inputs, that the Court did not, excuse me, Martin Nick did not challenge specific resource and pricing parameters which were findings, findings of fact made by the Court, and those resource and pricing parameters were then manipulated mathematically. Now, look, let's just, let's not get to that yet. I just want to get a clear understanding of what you're saying. Because I don't read, I do not read your opening brief as making any argument that any of the core findings are factually, clearly erroneous. We disagree. Where do you make a clearly erroneous argument? I understand you to raise five issues that you should have had but didn't have a jury trial, that the judge did not comply with Rule 605, that he incorrectly adopted the royalty method of valuation, that the SOP rule was incorrectly applied, and that the interest calculation was an abuse of discretion. I don't see anywhere in there where you're saying that he clearly erred in making findings of fact. The determination of fair market value is a matter of just compensation by the fact finder is reviewed according to clearly erroneous standard review. That's this Court's decision in 2228 O. Akers. Martin Nick argues that the Court's determination of fair market value according to the royalty valuation method was clearly erroneous. Okay. Let's assume that's correct. All right. Yeah, assume that's correct. And he should never have gone there and all the economic stuff was nonsense. Okay. Just assume all that. It's out. Take all the economic stuff out. Take the royalty calculation out. Look at your expert's calculation that's based on uncontradicted facts. It's in his letter of June 30th, 2003. And he comes up on uncontradicted facts with a valuation of $390,000. But we explained in the rebuttal, in the reply brief, that that's the government's position, that Martin Nick adopted an income calculation of $399,000. We disagree with that. That proffer was made in response to the Court's preliminary evaluation, its preliminary decision. We argue that the Court did not properly use an income approach in the preliminary evaluation. I understand that. I've agreed with you. I've agreed with you. The royalty rate. So we offered the calculation to show if the Court properly applied the income evaluation according to its own preliminary findings, the number would be $399,000. But we expressly reserved, both in the proffer by Mr. Hughes, by Mr. Cartwright, and in our briefing, that that was not Martin Nick's position. Martin Nick's position was a valuation of $1,914,000. But look. I mean, it's really important for us to get on the same train. Okay? I'm saying that the core fact findings, and if you want me to list them all, I will. I think I understand what you're saying. Okay. All right. That the core fact findings are not challenged. Forget the theory that you apply to them. They're not challenged individually and specifically. Yes. Yes. We collaterally attack them through the argument regarding the scope of the project. Okay. But we are on the same page, that there is no attack on those core fact findings. That's correct. All right. Now that we move to your whatever you want to move to. But I don't understand, if that's true, why we have to worry about the methodology that was used. Because no matter how you slice it, that dollar figure is less than the award that was made. The $399,000 figure, which we can refer to. Well, it's off by $40,000 or $50,000, but in your favor. Our position is, if the Court's concerned about the significance of that number, again, that was offered as a critique of the Court's own preliminary decision. The Court's preliminary decision is not subject to this appeal. Martinique reserved his rights and indicated he did not agree with that. I don't understand. But you don't quarrel with the facts. So if you take the facts and you take the dollar figures opposite those facts, they add up to a figure that's $40,000 to $50,000, depending on what you. Our position is that valuation methodology is fundamental to a determination of just compensation as a matter of constitutional law, and you can't disregard valuation methodology. What the Court did here was reject the income method, and it's correct that we did not challenge specific findings on resource values, specific findings on pricing parameters, but it doesn't mean that anything else the Court does is nonreviewable as a matter of law. That's essentially what the Court is saying, and that's essentially what the United States is saying. And I'm not saying it's unreviewable as a matter of law. I'm just saying, why bother? Because it doesn't make a slightest bit of difference. Because valuation methodology makes a difference, and valuation methodology determines fair market value. Where? And we'll challenge the Court's valuation methodology. But if the numbers come out the same. No, they don't. Okay. I respectfully disagree that the numbers come out the same. What do you – what would you – what result – let's assume you prevail. What result would you want? What do you want us to do? The problem here is that the Court didn't use income methodology. You know, that's a simple answer. Well, we would request a remand for a new trial for a valuation. Why would you have to have a new trial? There are no facts. There are no factual disputes. Everybody agrees. There is a dispute. We dispute which valuation. Not in this. Not in the brief. So you don't need a new trial unless the trial is to determine facts. Isn't that right? That's what the trial is for, isn't it? Yes. The trial is for determining facts. Now, if there are no facts in dispute, what would the trial consist of? You'd remand it to the same judge to say, give us a new valuation using a different formula. Isn't that what – the only result based on your appeal as is posted? Because part of the fact-finding process includes a selection of valuation method, and determination of fair market value cannot be accomplished without the selection and reasoned selection of valuation method, and that fact-finding is subject to a clearly erroneous standard of review. The courts have clearly stated that. I don't think there's a dispute about that. That's the United States position, and we agree with that. So valuation method is essentially an issue here. We interpose that issue. Even if we don't – even if we decide to do it. See, the difference is – let me try one more time in a different way. Your expert came up at trial with a valuation of $1.9 million or something. Based upon a different scenario of the amount of gravel or the amount of – whether it went up the hill or didn't go up the hill, whatever. District judge made some findings of fact. I don't buy, the district judge says, the amount of territory involved. I don't buy. I'm choosing the core findings. I am making a fact-finding about the amount of territory. I'm rejecting the expert's premise. So that's done. Now, you could apply a different methodology to it, but he rejected the expert's factual premises as well as the methodology. He rejected both parties' offer of proof, but he used the same data. When we talk about fact-finding and challenge to fact-finding, a fundamental point we'd like to make is that, again, we agree that Martinique did not challenge specific findings in the course regarding resource values and pricing. But we did challenge fact-finding in the sense of valuation, which I discussed. But we also – fundamentally important here, we challenged the Court's fact-finding because the Court rejected – the Court argued, and this is just following the point you made, the Court said that both parties' offers of proof according to the income method were speculative. And it was rejecting the income method. Now, the Court was saying that – or we read the decision as saying that it rejected the income method as a matter of law. The United States says it was fact-finding. It's perhaps both, and we can argue, and we've argued both, that the Court was wrong, both as a matter of law and the Court was wrong both on fact-finding. But fundamentally, why – an additional reason why the Court was wrong in its fact-finding in regard to royalty valuation was it was essentially arbitrary. The Court rejected all this offer of proof on income valuation, the data, the premises, saying it was speculative, and it turned around and used exactly the same information and ginned up a royalty valuation. Now, to me, that's arbitrary, and it's – Well, it just goes to show both of them were arbitrary. I mean, this isn't – And so in that respect, we have challenged the Court's fact-finding. I'd like to discuss a jury trial because time is limited. A jury trial issue can be examined on two fundamental questions. The first question is the nature of the Court's jurisdiction over an earlier date of taking when the government files a condemnation action with a declaration of taking. The second question is whether Civil Rules 71A subsection H applies once the Court's jurisdiction is determined. Regarding the first question, the principle announced in United States v. Dow is well-established. According to that case and the precedent thereafter, either party to a condemnation action with a declaration of taking may assert an earlier date of taking, even a taking prior to the filing of the action of the commencement of the suit, and the Court will still have jurisdiction over the matter, and the case sounds in condemnation. How do you get that out of Dow? Because there it was filed after the lawsuit was filed. The facts in Dow – if I understand the Court's question, is the Court questioning whether Dow authorized a date of taking prior to the commencement of the lawsuit? Yes. Those were the – the suit was filed in 1946. The suit was filed in 1943. And then the government took possession of the tracts, and then they filed a declaration of taking in 1946. Declaration of taking was filed in 1946, but the Court determined that – But not the lawsuit. I'm sorry. The declaration of taking action, my understanding, was filed in 1946. I agree. But the lawsuit was filed in 1943 before the government took possession of the property. So I don't see how Dow gets you to the point where any taking that occurs prior to the initiation of a condemnation action. Cases following Dow rule that a taking prior to the following of the condemnation action with the declaration of taking will still be – What case? Well, Herrero is an example. Well, Herrero, the government – the Court allowed the government to file an amended complaint that related back. So it related back to the time prior to the taking. So that doesn't get you there. Well, I respectfully disagree, because the Court said – a panel of this Court said that it was not merely the government's filing of an amended date of taking, but the fact that the government possessed the property prior to commencement of the action. In fact, the Court noted that that was the United States rationale for seeking an earlier date of taking. We've also cited an unpublished Tenth Circuit, Ledford. There's a series of cases that we've cited that indicate that either party can assert whether it's the government or the condemned meeting, can assert an earlier date of taking either during the pendency of the action or a date of taking prior to the commencement of the action. Dow and the additional cases indicate whenever the date is determined, whether it's the pendency of the action or prior to the filing of the action, the student remains in the condemnation court. It is not converted to an inverse condemnation action. And fundamentally, we fundamentally disagree with the district court's analysis on this point, because if the district court were correct or the government were correct as a matter of law, the decision would say that this is an inverse condemnation action. Or Dow would have held – Dow discussed the Tucker Act and said that inverse condemnation lies only in the court of claims pursuant to the Tucker Act. The Supreme Court understood that principle and yet went on to rule an earlier date of taking would be allowed in the action. So we think that the Dow cases authorize earlier date of taking in the condemnation court. The case is not converted to inverse condemnation. The second question, the point is well taken as a matter of law that a condemnation court has jurisdiction over earlier date of taking. The next question is, all right, does Civil Rule 71A, subsection H, apply to that type of action? Now, the district court held and the government agrees that this court's prior decision in KOK is control and precedent. We disagree. Because KOK was a pure inverse condemnation action brought pursuant to the Mining and the Parks Act, did not address the Declaration of Takings Act, did not address condemnation with Declaration of Takings, did not address Dow or the principle that we've argued that a condemnation court has jurisdiction over an earlier date of taking. Therefore, Dow is not control and precedent for this case. Excuse me. KOK is not control and precedent for this case. We think that once the determination is made that the condemnation court has jurisdiction over an earlier date of taking, then Civil Rule 71A applies, and that does not do KOK is essentially distinguished. Without going through the details of the scope of the project, we'll go back to the Court's earlier questions, whether Martinique has challenged fact-finding by the Court. We've acknowledged that we did not challenge the Court's fact-finding on resource parameters and pricing parameters. But we collaterally attacked those findings and the valuation method through the scope of the project rule, which is a well-established principle of law. What in concrete terms did the district court do that affected its decision? It recognized the government disagreed with Martinique's offer of proof on a variety of specific points, which were enumerated, and the Court ---- The district court, as I understand it, didn't rely on anything that you wanted excluded in making its decision. It did use the 2000 sampling, which I thought both of you agreed was okay. So what in concrete terms did the district court do that you say it shouldn't have done? The district court recognized the government's criticism grounded on uncertainty of various resource values, and it accepted or favorably recognized the government's criticism grounded on uncertainty regarding resource values and lowered its findings or incorporated that information in its findings of fact on the overall resource volume, on the large nugget, on the jury grade fraction, and that adversely affected valuation. Essentially, we've argued, although the district court said it was not going to I think that was just a cover-up. In fact, the Court did recognize evidence that adversely affected valuations for the reasons that we've stated. I'd like to stop. I've only got a few minutes for rebuttal. Surely. Ms. Hazard? Good morning, Mayor. It's the Court. I'm Katherine Hazard here on behalf of the United States. The district court's award of judgment in this case lies squarely within the range presented by the parties. Can we get a couple things just straight? I mean, do you agree that most of the opinion is nonsense? No, I don't. Well, I mean, it came from out of absolutely nowhere. It's 75 pages worth of economic gibberish. And adopts a theory for which there's absolutely no support in the record. So, I mean, if you don't agree with that, then I guess maybe you should tell us exactly what part of what I just said in rather pejorative terms that you don't agree with. And let's get down to the heart of your position. Okay. Well, first of all, as we pointed out in our brief, the district court's factual determinations are supported by evidence in the record. That's a different thing from what I was trying to do, which was to get away from everything else and get down to that point. All right. The methodology it applied is one that was championed by neither of the parties here. It just pulled it out of the air, right? Well, not exactly, no. I mean, there are two common income methods used for determining minerals in place. And one is the discounted cash flow method, which is the method applied by both of the parties here. And the other is the royalty rate method. And those are both recognized, have been recognized by this Court. They're recognized in the Federal appraisal standards. And so while the Court and courts have adopted in other contexts, and this Court has sustained their ability to do that. Sure. If there's some basis in the record for doing so. Well, the district courts, we don't agree with the method adopted by the district court here. We think it's harmless error that it applied the method it did. We might not be able to make that argument if the opponents had challenged the factual determinations relating to cost and expense of extracting the resource or the scope of the resource. Well. They didn't challenge those here. And under their expert's own method, as we noted when he was presenting his argument. I think the last thing this case needs is some additional person to claim to be an economist. But. But. Both of you pronounced, at least at the outset, for the purpose of litigating this case, the method that the Court used. That is a royalty method. Right? You mean in the district court? In the district court. You started out in this adversary process. And your experts present their opinions based upon their economic theories that you say are supported in case law. And then the court rejects all that the adversaries have presented and says, I have a new economic theory. A different one. And I divine that, what, 12 percent ought to go to the entrepreneurial factor of production that you, neither of you have talked about. And where did that 12 percent come from? Thin air? Well, not exactly. It was our discount figure. It was your discount figure. Right. But who knows that that is an appropriate allotment to the entrepreneurial part of. If I remember correctly, the district court took that entrepreneurial part out in its initial decision and its supplement added it back in. So you say the decision kind of ran in a circle. Take it out one place, put it back in, give it a different label. I'm just saying that that factor, if I'm recalling correctly what the district court did, and it's described in our brief, that issue is not presented because the district court added it in and then decided it should take it out. And what are we dealing with then? Same result under different banners? Is that all it amounts to? Different labels for the same thing? I'm not sure that I'm understanding your question. I guess where our position is is we cannot exactly track what the district court's method was here, and that's why in our brief we try to describe what the district court did, but we don't try to defend its application. All we say is on the facts here, which are undisputed on appeal, you would get a lower figure by applying – in fact, Martin's expert did get a lower figure by applying his method, a discounted cash flow method, which is a method we adopted also, to the undisputed facts here. So any problem with the methodology is harmless error. Okay. Well, that's a difficult position to be in, to say none of us know what the district court did, but whatever it did, it doesn't make any difference. Well, it's not uncommon, actually, in inverse condemnation cases. When you give evidence to the jury, they come up with a figure, and you usually don't have a rationale for how they arrived at the figure. It's actually pretty common in condemnation cases. And as we acknowledge and the district court acknowledge, there is a lot of speculation involved here. We don't know – nobody knows what the cost of extracting and marketing these mineral resources is going to be. We don't even really know what's there. We're just trying to come up with a reasonable estimate. Ms. Hazard, if we followed your suggestion and declared it harmless error, wouldn't we have to do something that hasn't been done on this record? Wouldn't we have to then do our own evaluation without either party knowing what it is and say it doesn't matter? That's the question Judge Levy was attacking, I think, when he says nobody knows what the court did, but we will conclude that it's harmless. Well, given that the judgment is what's appealed from, and given that the judgment is higher than it would have been under Martinique's method. Under one method, but it's not under both. Let me ask the question. I'm sorry. Because we've heard you say what you're saying now. If – don't we have to know what the district court did? And let's assume that we would agree with you and with the other side that the district court's method was at least an unusual method. What would be the remedy? Other than saying it's harmless. If we didn't agree that it's harmless based on this record, we would say as a matter of law it can't because we don't know what it is. Then what would be the remedy? If you thought that he suffered harm because of the method applied and that the method is not defensible on the record or is not an accepted methodology, then the appropriate remedy would be a remand. And a remand for what? With instruction to apply whatever methodology you think is appropriate. Would there need to be a new trial, as they are suggesting? Well, not – well, not as to the undisputed facts. Those are final. However, there would be other facts which would relate to application of a discounted cash flow method or a royalty method, you know, fleshed out in a different way than what was applied here to the undisputed facts. We believe that upon a remand with such instructions, the judgment would be lower, not higher. But that's our reading of their expert's submission. That's a good lesson in beware of what you ask for. I'm not sure what you mean, but nobody doesn't get it for us. Yeah, I understand your point. Regarding the right to a jury trial here, Martinique made a litigation strategy decision in bringing his inverse condemnation case and stipulating to a date of taking earlier than the filing of the government's condemnation action and declaration of taking. And we believe that that action was barred by the earlier dismissal of prejudice by the Court of Federal Claims. However, the district court did not agree with us on that. And rather than continuing to litigate and dispute that issue, we stipulated to an earlier taking date. The district court, prior to entering that stipulation by the parties, they made it very clear that if we entered and if we accepted an earlier date of taking that predated the filing of the government's condemnation action, you would view it as an inverse condemnation to which no jury trial would apply. Well, now, I take it that when the government stipulated to the date of the earlier taking, that was based on the truth, right? Well, it was a settlement. Well, you agreed, the United States agreed that the date of taking was prior to the filing of the condemnation action and the taking resolution, right? That's right. And for all we know, that's true. The government agreed to what was true. He thought the date was earlier. We thought the date was later. We settled on a date in between. All right. Okay. Now, this landowner, this claimant, had a right to proceed in inverse condemnation. Yes, he did. And he started that in the Court of Claims and then reasserted it in the district court, all pursuant to the statute allowing it, after you had instituted a condemnation proceeding, and that was his only remedy, was it not, to remedy the early taking? An inverse condemnation action was his only remedy to remedy an earlier date of taking. Now, once he files that inverse condemnation case, you're saying that if he succeeds in that and establishes, by stipulation or otherwise, an earlier taking, there is no way on earth that he can have a jury trial. That's correct. So in order to make the claim, he has to give up the jury trial. That's right. And if he wants a jury trial, all he has to do is abandon his inverse condemnation case that in this case was worth, what, tens of thousands of dollars? Well, that was his judgment to make. I mean, yes, it would have been a later date of taking. That, pursuant to our settlement in the CFC, we agreed that we would file within a certain period of time a direct condemnation action and a declaration of taking and deposit with the court what we believe we owed him. We did that. And? And he dismissed his inverse condemnation action. And up until then, he's entitled to a jury trial. That's right. But once he makes an effort to correct, by money damages, that which the government has inflicted upon him by way of either a wrong or an unlawful taking or at least a pre-condemnation taking, once he asserts that right, you say his statutory right to jury is gone. That's how we read the statute. That's correct. Well, why does it have to be read that way? Why can't these be two separate actions, one tried by a jury with a date of taking that reflects the filing of the condemnation and a separate case that reflects the earlier taking and inverse condemnation? Why are those two inconsistent? It might be that the earlier taking did him a great favor because the price of gold either went up or down in the meantime. And they are two separate claims based upon two separate dates of taking on which the facts could be totally different so far as damages is concerned. Do you not agree? I'm not sure that I'm following you because I think there is only one date of taking. Well. And the taking here was necessarily a regulatory taking. It was not a possessory taking. But a regulatory taking does not have to be a complete taking. No. And a regulatory taking can be a temporary taking. It could be. Now, it doesn't matter back. If it's abandoned, it's, you know, there have been, I mean, conceptually there could be a temporary regulatory taking followed by a permanent condemnation. Absolutely. Conceptually I grant that to you. And as a matter of fact, as a matter of fact, something was done with this injunction along the way. It was lifted, was it not? Oh, these dates post-date the lifting of the injunction. All of them post-date the lifting of the injunction? Yeah. But conceptually we could look at this as a taking. When you, when the government filed its condemnation case. And we could look at everything that happened before that as a temporal taking. And they're two separate claims. But there was no change. I know, except on. There was no abandonment by the government of the restrictions on development of these claims. So in any event, you're saying in this posture, the only way that this claimant can get a jury trial is to abandon the inverse condemnation case or claim that we know is worth tens of thousands of dollars. Yes. Okay. And maybe even hundreds of thousands. I don't know. I've forgotten the arithmetic. I don't know. It's substantial. You know, the price of gold goes up and down. But it's big. I don't happen to know in this case what the price of gold was at the time we filed our declaration of taking relative to what it was at the earlier date. So, you know, sometimes it goes up and sometimes it goes down. It could be that it came out close. I don't know because we didn't try that case. Agreed. Regarding the interest rate, it was not a clear error for the district court to set the rate at the statutory rate. Martinique failed to show that this rate was unreasonable, and the district court did not err in excluding investments that posed a risk to the principal. Regarding Martinique's motion in Limoney, it was not an abuse of discretion. Basically, as we understand Martinique's argument here, is that the district court should not have allowed the government to put on its case, that is, to rebut Martinique's evidence regarding the quantity and quality of the resource or his estimates of the costs of extracting and marketing the gold. The district court properly allowed the government to present its case. Regarding the district court's reliance on the general economic treatises, we don't think it was error for the district court to consult these treatises, although, as we discussed earlier, we cannot defend the methodology it applied. If the court doesn't have further questions. Thank you very much. I don't have any questions, but just normally, let's assume the court wants to look at some treatises, wants to consider theory, normally, doesn't the court advise the parties of what it's doing? I don't believe so. From what I understand the case law on this issue is, often a court could take judicial notice of treatises, but I see from the cases that I've read it's sort of a division, and that is that a court could recognize sort of general principles. One example is the Supreme Court case that discussed an ability to consult books or literature that acknowledged that there was a depression and that during the depression certain economic results followed. But it can't then say. I don't know how you answer a question when you don't know what it is. I'm sorry, Your Honor. Normally, when a court does what you're saying, treaties, whatever he wants to do, the point is the point about which there's no disagreement. Reasonable minds wouldn't differ. And so the court reads that in like you're talking about depression. There's no way anybody's going to argue that didn't happen, that didn't happen. But when he goes to a treatise and consults an expert, if the parties don't know who the expert is, he has brought in a witness for whichever side the expert comes down on without notice to the other side. Now, does it sound a little peculiar to you? It does, Your Honor. Do you think it happened in this case? I don't think it did because I think what the court did was to use in whatever manner basic economic literature to try and inform itself about what are very complicated issues in this case. Thank you, Your Honor. Okay.  Mr. Albert. I'd like to first address the issue of the court's violation of Federal 11-605. I didn't address that on opening. I understand the court had some questions about that. Not only did the court make it up as it went along in terms of its royalty valuation approach, but its concoction of this approach was totally outside of the We use the term economic literature, but we identify the citations. The court devoted about 25 pages of this decision to a review of this literature, an exegesis of the literature, to a rationalization. Well, if it was all just in the air, it doesn't make any difference. That's what I keep coming back to. I mean, I agree with you. It shouldn't have done. Well. You know, I mean, but did it matter? Did it actually make any difference to any fact that the district court found? We're back to the point that the trier of fact and just compensation cannot arrive at a fair market value determination without the utilization of evaluation methodology, which is presented to the trier of fact and which is recognized as admissible and proper and competent evidence. There was no offer of proof here on royalty valuation by either party. There was no the court did not go through the process of judicial notice or otherwise provide either party, and especially my client, noticed an opportunity to be heard in regard to its off-the-record, extrinsic review of this material. My client's rights of due process have been violated. Not only is it rights of due process. Well, you're surely not saying that it's a violation of due process for a judge. Suppose the judge has a degree from Seattle University in economics. I mean, you don't have to empty your head. I mean, what you cannot do is to make a finding of fact based upon something that's not in the record. We agree, and that's been our argument. And our argument is that the court engaged in fact-finding outside of the record here, denies that it did that, but we disagree. We don't think that denial is credible. The court contends it did not go outside the record, but you look at the stipulated exhibits that were submitted to the record, and there's no reference to any of this  So it's clearly, in our opinion, it's outside of the record. It was fundamental to the court's evaluation and determination. If the remedy for Evidence Rule 605 is a reversal of the judgment, we contend that's a proper remedy here, is reversal of the judgment, or remand for a new trial before a new court. Okay. Thank you, counsel, for your argument. And the matters just argued will be submitted.
judges: Farris, Leavey, Rymer